UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DU PEI HONG, *et uno*,

                  Plaintiffs,

-v-

BELLEVILLE DEVELOPMENT GROUP, LLC, *et al.*,

                  Defendants.

No. 15-cv-5890 (RJS)
OPINION AND ORDER

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8·17·16

RICHARD J. SULLIVAN, District Judge:

    Plaintiffs bring this action in connection with a failed real estate development project in New Jersey. Now before the Court is Defendants' motion to dismiss Plaintiffs' First Amended Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) on the ground that this dispute is subject to a written arbitration agreement which deprives the Court of jurisdiction. For the reasons set forth below, Defendants' motion is granted.

I. Background[1]

    This case concerns a dispute arising from an alleged breach of a subscription agreement (the "Agreement"). (Compl., Ex. 1.) Plaintiffs Du Pei Hong ("Hong") and Li Wei ("Wei") are foreign nationals who reside in Chengdu, China. (Compl. ¶¶ 5-6.) Defendants Belleville Development Group, LLC ("Belleville") and CPP Finance and Development Group, LLC

---

[1] The following facts are taken from the First Amended Complaint, filed on September 30, 2015. (Doc. No. 16 ("Compl.").) In ruling on Defendants' motion, the Court has also considered Defendants' Memorandum of Law (Doc. No. 23), Plaintiffs' Opposition (Doc. No. 24), and Defendants' Reply (Doc. No. 25). When considering a motion to dismiss, the Court may also consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Here, given that Plaintiffs have attached the

("CPP") are limited liability companies with their principal place of business in New York, New York; Defendant Wealthplus Management Group, LLC ("Wealthplus") is a "limited liability company with its principal place of business" in California. (*Id.* ¶¶ 7-8, 13.) Defendant Anthony Regan ("Regan") resides in New York, New York and is a managing member and the chief executive officer of Defendant Belleville, and also managing director of Defendant CPP. (*Id.* ¶¶ 9-11.) Defendant Xiaoging Wang ("Wang") resides in California and is a member of Defendants Belleville and CPP. (*Id.* ¶ 12.) Defendant Wang is also a managing member of Defendant Wealthplus. (*Id.*)

In 2013, Plaintiff entered into the Agreement with Defendants Belleville and CPP to develop a project, "Imagine Center," in Belleville, New Jersey.[2] (*Id.* ¶¶ 14-15.) Plaintiffs agreed to pay $4 million for the project and transferred the money by wire to Defendants Wealthplus and Wang. (*Id.* ¶¶ 16-17.) Pursuant to the Agreement, Belleville was to use the money "for the purpose of land acquisition and development of the project." (Doc. No. 16-1 at 14.)

On August 28, 2013, Defendant CPP purchased property at 630-632 Washington Boulevard, Belleville, New Jersey. (*Id.* ¶ 19.) The Agreement stated that if within twelve months "of the closing of the Subscription Agreement" the Township did not designate the property as an "Area in need of Redevelopment," Class 1 investors would be entitled to "call for a sale of the land and to receive the return of their investment and percentage of any profits which may be earned." (*Id.* ¶ 20.) Plaintiffs claim they are Class 1 investors and seek to enforce

---

subscription agreement at issue in this case to the Complaint, the Court has also considered it in ruling on the motion.
[2] In their Complaint, Plaintiffs state that the parties formed two agreements. (Compl. ¶¶ 14-15.) However, in their opposition memorandum, Plaintiffs reference a single "Agreement" when they discuss the arbitration clause. (Doc. No. 24 at 5.) Upon review of Exhibit 1, which is attached to the Complaint, only one agreement, the subscription agreement dated May 16, 2013, contains the arbitration clause at issue. Thus, the Court will analyze that agreement.

that provision of the Agreement, since the Township has not designated the property. (*Id.* ¶¶ 21-23.) Specifically, Plaintiffs state that they have called for a sale of the property and that Defendants have not complied. (*Id.* ¶¶ 23-24.)

On September 30, 2015, Plaintiffs filed their Complaint, asserting claims for (1) breach of contract, (2) waste, (3) and intentional interference with a contractual relationship. (Doc. No. 16.) On November 24, 2015, Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks jurisdiction due to the existence of what they claim is a mandatory arbitration clause in the Agreement. (Doc. No. 23.) Specifically, Defendants point to Paragraph 11 of the Agreement, which states:

> In the event a dispute arises in connection with the interpretation or implementation of this Agreement, the parties to the dispute shall attempt to settle . . . . If no mutually acceptable settlement of such dispute is reached within (60) days, then such dispute shall be finally and exclusively settled by arbitration as provided herein. Arbitration shall be conducted in accordance with the Arbitration Rules of American Arbitration Association . . . . The arbitration shall take place in Los Angeles.

(Doc. No. 16, Ex. 1 at 17.) Consequently, Defendants argue that all the claims in the Complaint are subject to arbitration because of their connection to the Agreement.[3] Plaintiffs filed an opposition to the motion on December 17, 2015 (Doc. No. 24), and Defendants filed a reply on December 29, 2015 (Doc. No. 25).

II. DISCUSSION

As an initial matter, the Court must determine whether it or an arbitrator must decide the issue of arbitrability. *See W. IP Commc'ns, Inc. v. Xactly Corp.*, No. N13C-06-052 (DCS), 2014

---

[3] Defendants argue, in the alternative, that the Complaint should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). However, because the Court concludes that there is an enforceable arbitration clause that requires dismissal of this action pursuant to Rule 12(b)(1), the Court need not reach Defendants' 12(b)(6) arguments.

3

WL 3032270, at *1 (Del. Super. June 25, 2014) ("[T]he Court must first determine whether a court or an arbitrator has the power to decide substantive arbitrability under the Agreement.").[4] "Unless the parties *clearly and unmistakably* provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (emphasis added).

Here, the Agreement does not explicitly state that an arbitrator will decide arbitrability of issues, and the parties have not otherwise presented clear and unmistakable evidence that they intended for an arbitrator to determine the issue of arbitrability. Thus, the Court concludes that it will decide the issue of arbitrability. *See James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006) ("The question of whether the parties agreed to arbitrate is generally one for the courts to decide and not for the arbitrators."); *see also DMS Props.-First, Inc. v. P.W. Scott Assocs., Inc.*, 748 A.2d 389, 392 (Del. 2000) (same).

Under the Federal Arbitration Act, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has recognized a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Indeed, "there . . . is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc.*, 475 U.S. at 649 (internal quotation marks and alteration omitted); *see also SBC Interactive, Inc. v.*

---

[4] The Court applies Delaware law because the Agreement states that it "shall be governed by and interpreted in accordance with the laws of Delaware." (Compl., Ex. 1.) However, given the relatively straightforward contract interpretation issues presented, the Court notes that it would reach the same conclusion under New York law.

*Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1998) ("Any doubt as to arbitrability is to be resolved in favor of arbitration."). Moreover, the Delaware Supreme Court "has recognized that the public policy of Delaware favors arbitration." *DMS Properties-First, Inc.*, 748 A.2d at 391. At a minimum, if an issue is "referable to arbitration," proceedings before the district court must be stayed until "such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. However, if an entire dispute is arbitrable, a court may also dismiss the action without prejudice for lack of subject matter jurisdiction so that the parties may pursue arbitration. *See, e.g., W. IP Commc'ns, Inc.*, 2014 WL 3032270, at *1; *Carder v. Carl M. Freeman Communities, LLC*, No. 3319 (VCP), 2009 WL 106510, at *1 (Del. Ch. Jan. 5, 2009).

To determine whether the claims at issue are arbitrable, a court must decide two questions: (1) "whether the parties have agreed to arbitrate" and (2) whether "the dispute at issue . . . comes within the scope of the arbitration agreement." *Wells v. Merit Life Ins. Co.*, 671 F. Supp. 2d 570, 573 (D. Del. 2009) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523-24 (3d Cir. 2009)). As to the validity of the Agreement, neither party here denies the existence of the Agreement, although Plaintiffs vaguely "deny that they consented to the arbitration of their claims." (Doc. No. 24 at 3.) However, Plaintiffs do not deny that they understood and signed the Agreement, nor do they make any argument that their signatures are forgeries or that they were procured by fraud. Their signatures on the Agreement thus demonstrate their assent to its terms, including the provision on arbitration. *See Wells*, 671 F. Supp. 2d at 574) (finding sufficient intent on motion to compel based on parties' signatures on contract); *see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 845 (2d Cir. 1987) ("[A] party is bound by the provisions of a contract that he signs, unless he can show special

circumstances that would relieve him of such an obligation."). The Court thus concludes that there is a valid agreement between the parties to arbitrate to which Plaintiffs have consented.

As for the second inquiry – whether the claims brought here fall within the scope of the Agreement – the Court must first decide "whether the arbitration clause is broad or narrow in scope." *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002). If the clause is broad, "the court will defer to arbitration on any issues that touch on contract rights or contract performance." *Id.*; *see also JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004). ("Where the arbitration clause is broad, there arises a presumption of arbitrability[;] and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." (citation omitted)). In such cases, "[i]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc.*, 475 U.S. at 650.

Here, the arbitration clause applies to any dispute that "arises in connection with the interpretation or implementation of this Agreement." (Doc. No. 23 at 4.) The Court finds that this phrase, especially given its use of the words "in connection with," is broad. *See AT & T Techs., Inc.*, 475 U.S. at 650 (describing as "broad" a provision requiring the parties to arbitrate "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder"); *see also ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 26 (2d Cir. 2002) (finding that an arbitration clause governing disputes over the "interpretation" of an agreement was broad). *But see Brown v. T-Ink, LLC*, No. 3190-(VCP), 2007 WL 4302594, at *11 (Del. Ch. Dec. 4, 2007) (finding arbitration provision on disputes

"concerning the interpretation or performance of this Agreement" narrow based on other broader provisions in the contract). The Court thus concludes that the arbitration clause in the Agreement carries a presumption of arbitrability.

Given this broad arbitration provision in the Agreement, the Court also concludes that the provision covers the disputes at issue in this case. Specifically, Plaintiffs allege a breach of their contractual "right to call for a sale of the land and to receive the return of their investment and percentage of any profits which may be earned." (Compl. ¶ 21.) As such, Plaintiffs allege a breach in the *implementation* of the contract – in essence, that Defendants failed to fulfill the performance required by the contract., (Doc. No. 16 at 4.) As such, Plaintiff's breach of contract claim unquestionably is arbitrable under Paragraph 11 of the Agreement.

In addition, the Court finds that Plaintiffs' additional causes of action for waste and intentional interference with the contractual relationship also relate directly to the implementation of the terms of the Agreement. Plaintiffs' claim of waste essentially accuses Defendants of mismanaging the property by mortgaging it and then failing to pay the mortgage. Since any determination of the parties' duties with regard to managing the property will necessarily involve interpretation of the Agreement, Plaintiffs' waste claim is arbitrable. *Cf. Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 293-95 (Del. 1999) (finding claims of breach of fiduciary duty arbitrable because contract with arbitration clause defined duties and obligations of manager). Similarly, the claim for intentional interference with a contractual relationship also necessarily involves determinations as to the duties owed under the contract. Indeed, one of the elements of this claim under Delaware law is to show "an intentional act that was a significant factor in causing [a] breach of contract." *WaveDivision Holdings, LLC v. Highland Capital*

*Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012). Here, Plaintiffs allege that Defendants failed to provide notice of the call for sale. To determine whether this is sufficient to prove tortious interference with a contract, the factfinder will have to analyze the terms of the contract and see whether a breach of contract occurred. *See Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 529 (5th Cir. 2000) (compelling arbitration of tortious interference claim), *reasoning adopted by Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, No. 2037-N, 2006 WL 2473665, at *5 (Del. Ch. Aug. 22, 2006); *see also U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98-cv-3099 (JGK), 2001 WL 300735, at *20 (S.D.N.Y. Mar. 27, 2001) (finding that a forum selection clause applies to a claim of tortious interference). Once again, this claim "arises in connection with the interpretation or implementation of this Agreement" and is thus arbitrable under the Agreement. (Doc. No. 23 at 4.)

Moreover, although Defendants Regan, Wang, and Wealthplus are not signatories to the Agreement, the claims asserted against them – the second and third causes of action – are nonetheless arbitrable. The law is clear that a signatory may be bound to arbitrate claims it brings against a non-signatory based on "the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 201 (3d Cir. 2001) (applying Delaware law and noting that "[i]n a series of cases, courts have allowed non-signatory third party beneficiaries to compel arbitration against signatories of arbitration agreements"); *see also Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, No. 2037-N, 2006 WL 2473665, at *4 (Del. Ch. Aug. 22, 2006) ("Like many jurisdictions, Delaware

allows a nonsignatory to a contract to compel a signatory to arbitrate under an equitable estoppel theory."); *Ishimaru v. Fung*, No. 929, 2005 WL 2899680, at *18 (Del. Ch. Oct. 26, 2005) ("One of the primary justifications for estopping a signatory from denying a non-signatory a right to arbitrate is that it is unfair for the signatory to have it both ways by attributing to a non-signatory the duties of a contract signatory for purposes of pressing claims but denying the non-signatory the right to invoke the arbitration clause."). Here, as discussed above, the claims brought against the non-signatory Defendants are closely intertwined with the Agreement and its implementation, and will necessarily involve the interpretation of the Agreement's terms. Courts have found that such claims, including tortious interference claims against non-signatories, may be encompassed by an arbitration provision in a contract. *See Grigson*, 210 F.3d at 529; *see also U.S. Fid. & Guar. Co.*, 2001 WL 300735, at *20. Moreover, the non-signatories have close relationships to the Agreement itself. The Complaint alleges that Defendant Regan, who is mentioned in the Agreement, is a managing director of signatory Defendant CPP and that Defendant Wang is a member of signatory Defendants Belleville and CPP and a managing member of Defendant Wealthplus, which itself is also mentioned in the Agreement. (Compl. ¶¶ 11-12.) Thus, given the relationship between the underlying claims, the Agreement, and the non-signatory Defendants, the Court finds that these Defendants may join Defendants Belleville and CPP in compelling arbitration of the claims in the second and third causes of action even though they are not signatories to the Agreement.

    In sum, the Court finds that Plaintiff's claims all fall within the scope of the Agreement and shall be decided by an arbitrator.

### III. CONCLUSION

For the reasons set forth above, the Court concludes that the claims alleged in the Complaint are arbitrable and that, pursuant to the terms of the Agreement, Plaintiffs will be able to adequately pursue their causes of action in arbitration. Accordingly, Defendants' motion to dismiss this action is GRANTED and the Complaint is DISMISSED without prejudice. The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry number 22 and to close this case.

SO ORDERED.

Dated:     August 17, 2016
              New York, New York

                                            RICHARD J. SULLIVAN
                                            UNITED STATES DISTRICT JUDGE